FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MAR 13 2013
DAVID J. MALAND, CLERK
BY
DEPUTY__________

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:13CR 65 |
| | § | Judge Schell |
| DJUANA PITTS (1) | § | |
| ELLIOTT SCOTT (2) | § | |
| JENNIFER GIPSON (3) | § | |
| ALLEN KENT BARNETT II (4) | § | |
| PATRICIA HINES (5) | § | |

**INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**Count One**

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering in violation of 18 U.S.C. §
1957)

**A. Introduction**

At all times material to this Indictment:

1. The defendant, **Djuana Pitts** (“**Pitts**”), worked at Esquire Title, LLC, a title company, facilitating loan closings.

2. The defendant, **Elliott Scott** (“**Scott**”), was an appraiser responsible for appraising the value of houses and causing the appraisals to be submitted to lending

institutions so that the lending institutions could rely on the appraisals in order to determine whether to fund mortgage loans.

3. The defendant, **Jennifer Gipson** ("**Gipson**"), worked at Esquire Title, LLC, a title company, facilitating loan closings.

4. The defendant, **Allen Kent Barnett II** ("**Barnett**"), was an appraiser trainee responsible for appraising the value of houses and causing the appraisals to be submitted to lending institutions so that the lending institutions could rely on the appraisals in order to determine whether to fund mortgage loans.

5. The defendant, **Patricia Hines** ("**Hines**"), worked at Esquire Title, LLC, a title company, facilitating loan closings.

6. A title company was a business that assisted sellers and buyers in closing property transactions by acting as a custodian of all funds involved. Title company employees, including escrow officers and escrow officer assistants, facilitated loan closings by, among other things, preparing HUD-1 Settlement Statements ("HUD-1s"), ordering loan fund disbursements, ordering title commitments and policies, and generally coordinating with realtors, mortgage lenders, and mortgage brokers regarding information necessary to close the loans. Title company employees were paid fees for their services for every home loan closing facilitated.

7. A HUD-1 was a document, prepared by a title company and executed by a buyer and seller of real estate at a loan closing, that reflected all sums received

from and disbursed to the borrower, seller, and the lending institution. Lending institutions relied on the HUD-1s to determine whether the funds they had loaned had been properly disbursed.

8. A mortgage brokerage firm was a business that assisted mortgage loan applicants in obtaining home–mortgage loans by gathering the financial information from the applicants and completing mortgage application forms for the loan applicants. The mortgage brokers or loan officers submitted the completed application forms to lending institutions for approval to obtain mortgage loans for the applicants. Lending institutions paid fees to mortgage brokers and loan officers for their services when the mortgage loans were funded.

9. Chris Limbrick ("Limbrick") processed loan applications as a loan officer for Outlook Mortgage, a mortgage brokerage firm, that were submitted to lending institutions on behalf of buyers seeking to purchase residential properties.

10. Michael Allen ("Allen") processed loan applications as a loan officer for Mortgage Icons, a mortgage brokerage firm, that were submitted to lending institutions on behalf of buyers seeking to purchase residential properties.

11. Debra Santens ("Santens") owned, operated, and controlled Silver Key Financial ("SKF"), a brokerage company, LDS Lakehill Developers Group, L.P. ("LDS"), and North Texas Developers Group ("NTDG"), from her residence in Plano, Texas, and at her office in Frisco, Texas, both in the Eastern District of Texas.

12. Santens controlled an account at Bank of America ("BOA") in her name and that of her husband ("Santens's BOA account"). Santens also controlled two other BOA accounts in the name of North Texas Developers Group ("NTDG account") and in the name of Silver Key Financial ("SKF account"). Santens's maiden name was Debra Rush.

13. Gregory Preston, Jr. ("Preston"), maintained and controlled an account at Bank of America ("Preston's BOA account") and an account at Washington Mutual Bank ("Preston's WAMU account"). Preston controlled another account at Washington Mutual Bank in his name and that of his wife doing business as Hair 2000 ("Preston's Hair 2000 account").

14. Eric Patterson ("Patterson") owned, operated, and controlled Garfield Property Management ("GPM"). Patterson also controlled a Woodforest National Bank account in Garfield Property Management's name ("Patterson's GPM account").

15. Casey Irons ("Irons") owned, operated, and controlled SB Holdings. Irons also controlled a Compass Bank account in the name of SB Holdings ("Irons's SB Holdings account") and another Compass Bank account in his name ("Irons's Compass account").

16. SA, CH, AH, RD, EF, GW, and HP were individuals known to the Grand Jury.

17. The "13245 Box Elder Property" was a residence located at 13245 Box Elder Lane, Frisco, Texas, in the Eastern District of Texas.

18. The "13213 Box Elder Property" was a residence located at 13213 Box Elder Lane, Frisco, Texas, in the Eastern District of Texas.

19. The "11424 Gatesville Property" was a residence located at 11424 Gatesville Drive, Frisco, Texas, in the Eastern District of Texas.

20. The "349 Benton Property" was a residence located at 349 Benton Avenue, Fairview, Texas, in the Eastern District of Texas.

21. The "13231 Scotch Pine Property" was a residence located at 13231 Scotch Pine Drive, Frisco, Texas, in the Eastern District of Texas.

22. First Texas Homes was a home–building company that built the 11424 Gatesville Property, the 13245 and 13213 Box Elder Properties, the 349 Benton Avenue Property, and the 13231 Scotch Pine Property.

23. Security National Mortgage, AMCAP, Taylor Bean & Whitaker Mortgage Corp., and HSBC Mortgage were lending institutions that made home-mortgage loans.

24. The following facts were material to lending institutions when determining whether to make a real–estate–purchase–mortgage loan and how much money to lend:

a. that any fees or payments made out of the loan proceeds be fully disclosed to the lending institutions;

b. whether the loan applicant was going to occupy the mortgaged home as his/her primary residence;

c. how much monthly employment income the loan applicant received;

d. how much money the loan applicant had in bank accounts;

e. whether the borrower had actually provided the down payment funds as indicated on the HUD-1s;

f. whether the gift letters submitted to the lending institutions were true and accurate;

g. whether the loan proceeds were being distributed to parties other than the seller that were not reflected on the HUD-1s;

h. that the true owner of record was reflected on the title commitment policies; and

i. that the true public record owner was reflected on the appraisal.

**B. The Conspiracy**

25. From in or about July 2006, the exact date being unknown to the Grand Jury, and continuing through on or about March 19, 2008, in the Eastern District of Texas and elsewhere, **Pitts**, **Scott**, **Gipson, Hines** and **Barnett** knowingly and willfully combined, conspired, and agreed with Irons, Santens, Limbrick, Allen, Preston, Patterson, CH, RD, HP, GW, and other persons known and unknown to the Grand Jury, to commit the offense of money laundering, a violation of 18 U.S.C. § 1957, in that they conspired to knowingly engage in monetary transactions in criminally–derived property of a value greater than $10,000, which property was derived from a specified unlawful activity, specifically wire fraud, a violation of 18 U.S.C. § 1343.

**C. Object of the Conspiracy**

26. The purpose of the conspiracy was to engage in monetary transactions of a value in excess of $10,000 with property derived from defrauding lending institutions through a scheme to induce them to loan funds for the purchase of residential properties through the use of materially false representations.

**D. Manner and Means of the Conspiracy**

27. It was part of the manner and means of the conspiracy that **Pitts**, **Scott**, **Gipson**, **Barnett**, **Hines** and other persons known and unknown to the Grand Jury, in the Eastern District of Texas and elsewhere, arranged for the following type of fraudulent transactions to occur:

a. Irons, GW, and HP located residences they believed could be (1) purchased at a legitimate market price by Santens through one of her companies or in her own name, and (2) then sold, for overstated values that were based on fraudulent appraisals, to buyers, including AH, SA, CB and EF, who were recruited by Preston, Patterson, CH, Limbrick, Allen, and Santens.

b. With the assistance of Preston, Patterson, CH, and Santens, loan officers, including Limbrick and Allen, falsified material information on loan applications including but not limited to the buyers' employment, income, assets, and occupancy information.

c. Appraisers and appraiser trainees, including **Scott** and **Barnett** fraudulently overstated the value of the residences and caused other materially false statements to be represented on the appraisals including the true public record owner of the residences.

d. Santens and Irons provided money to **Pitts**, **Hines**, and **Gipson**, or Esquire Title, on behalf of the buyers, including SA, AH, CB and EF, for the down payment of Santens's sales to the buyers. However, **Pitts**, **Hines**, and **Gipson** caused the preparation of false

HUD-1s that reflected that the buyers, including AH, CB, EF and SA, had provided the down payment funds.

e. The conspirators caused the fraudulent loan applications, appraisals, and HUD-1s to be submitted to lending institutions, including Security National Mortgage, AMCAP, Taylor Bean & Whitaker Mortgage Corp. and HSBC Mortgage, with the knowledge that the lending institutions would and did rely upon the materially fraudulent representations in funding the mortgage loans.

f. After **Pitts**, **Gipson**, **Hines**, and RD distributed the loan funds at the closings to persons, including Santens, involved in the conspiracy, Santens and others would engage in financial transactions of the fraudulently derived money in values greater than $10,000.00.

28. The conspiracy extended to transactions regarding the following properties:

| Address | City | State |
|---|---|---|
| 13259 Scotch Pine Drive | Frisco | Texas |
| 11460 Gatesville Drive | Frisco | Texas |
| 95 Edgebrook Drive | Whitney | Texas |
| 11305 Jasper Drive | Frisco | Texas |
| 13129 Scotch Pine Drive | Frisco | Texas |
| 13285 Sulphur Springs Drive | Frisco | Texas |
| 11370 Gatesville Drive | Frisco | Texas |
| 11959 Tyler Drive | Frisco | Texas |
| 11692 Beeville Drive | Frisco | Texas |
| 12576 Pond Cypress Lane | Frisco | Texas |
| 13202 Wimberly Drive | Frisco | Texas |
| 12573 Granite Falls Trail | Frisco | Texas |
| 11473 Cedar Springs Drive | Frisco | Texas |
| 22290 West Meadow Drive | Whitney | Texas |
| 5660 Shiloh Forest Drive | Midlothian | Texas |
| 5830 Shiloh Forest Drive | Midlothian | Texas |
| 11428 Cedar Springs Drive | Frisco | Texas |
| 12525 Granite Falls Trail | Frisco | Texas |
| 11424 Glen Rose Drive | Frisco | Texas |
| 13389 Wimberley Drive | Frisco | Texas |
| 10842 Providence Drive | Frisco | Texas |
| 15201 Bull Run Drive | Frisco | Texas |
| 22209 Field Street | Whitney | Texas |

| | | |
|---|---|---|
| 1767 Highland Drive | Whitney | Texas |
| 11340 Jasper Drive | Frisco | Texas |
| 11367 Gatesville Drive | Frisco | Texas |
| 13245 Scotch Pine Drive | Frisco | Texas |
| 11331 Gatesville Drive | Frisco | Texas |
| 11316 Gatesville Drive | Frisco | Texas |
| **Address** | **City** | **State** |
| 1156 Whispering Oaks | Desoto | Texas |
| 13350 Lincolnshire Lane | Frisco | Texas |
| 12027 Yoakum Drive | Frisco | Texas |
| 11478 Glen Rose Drive | Frisco | Texas |
| 11424 Glen Rose Drive | Frisco | Texas |
| 10691 Providence Drive | Frisco | Texas |
| 12594 Pond Cypress Lane | Frisco | Texas |
| 12557 Granite Falls Trail | Frisco | Texas |
| 13129 Scotch Pine Drive | Frisco | Texas |

29. On or about the following dates with respect to the following properties, as representative of the manner and means of the conspiracy, the following co-conspirators took the following actions:

30. **<u>349 Benton Property</u>**

a. In or about April, 2007, Irons and GW identified the 349 Benton Property as a potential property for the scheme, and shared this information with Santens.

b. In or about April, 2007, Preston recruited EF to purchase the 349 Benton Property from Santens for the purported price of $565,000.00.

c. On or about April 30, 2007, EF, as a buyer, and Santens, using Debra Rush, her maiden name, as the seller, executed a sales contract for the 349 Benton Property for the purported price of $565,000.00.

d. On or about May 11, 2007, Santens, as a buyer, purchased the 349 Benton Property using her maiden name, Debra Rush, from First Texas Homes, the seller, for the price of $294,000.00.

e. On or about May 22, 2007, Preston and Santens caused a fraudulent loan application that included false employment, income, occupancy, and asset information to be submitted to Taylor Bean & Whitaker Mortgage Corp., on behalf of EF, requesting loans totaling $480,250.00 to purchase the 349 Benton Property.

f. On or about May 3, 2007, **Hines** caused a false title commitment policy to be submitted to Taylor Bean & Whitaker Mortgage Corp. The title commitment policy falsely stated that record title to the 349 Benton Property was vested in the name of Debra Rush on March 22, 2007, despite the fact that First Texas Homes was then the record owner and Santens did not purchase the 349 Benton Property until May 10, 2007.

g. On or about May 22, 2007, Santens, from the Eastern District of Texas, transferred $22,493.85 by wire from her BOA account to **Hines** at Esquire Title, LLC, for EF's down payment for the purchase of the 349 Benton Property.

h. On or about May 22, 2007, **Hines**, Santens, Preston, Irons, and others caused Taylor Bean & Whitaker Mortgage Corp. to fund the mortgage loan to EF by transferring $488,946.85 and $55,553.08 by wire to Esquire Title, LLC.

i. On or about May 23, 2007, **Hines**, at Esquire Title, LLC, transferred $229,804.24 by wire as the seller's proceeds to Santens's BOA account.

j. On or about May 23, 2007, **Hines**, at Esquire Title, LLC, transferred $16,285.32 by wire to Santens's SKF account for loan broker fees.

k. On or about May 24, 2007, Santens transferred $60,000.00 from Santens's BOA account to Preston's Hair 2000 account as a payment for recruiting EF to act as a buyer.

31. **11424 Gatesville Property**

a. On or about August 1, 2007, Irons and HP identified the 11424 Gatesville Property as a potential property for which they could obtain a fraudulently overstated appraisal, and shared this information with Santens.

b. On or about August 1, 2007, Preston recruited AH to purchase the 11424 Gatesville Property from NTDG for the purported price of $425,000.00.

c. On or about August 1, 2007, AH, as a buyer, and Santens, representing NTDG as the seller, executed a sales contract for the 11424 Gatesville Property for the purported price of $425,000.00.

d. On or about August 23, 2007, **Barnett** falsely appraised the 11424 Gatesville Property at $425,000.00 and identified NTDG as the public record owner; the appraisal was later submitted to Security National Mortgage on behalf of AH.

e. On or about September 10, 2007, Santens, as a buyer, purchased the 11424 Gatesville Property through her company, NTDG, from First Texas Homes, the seller, for the price of $272,055.00.

f. On or about September 14, 2007, Preston and Limbrick caused a fraudulent loan application that included false employment, income, occupancy, and asset information to be submitted to Security National Mortgage, on behalf of AH, requesting loans totaling $415,000.00 to purchase the 11424 Gatesville Property.

g. On or about September 12, 2007, Santens, from the Eastern District of Texas, transferred $10,000.00 by wire from her BOA account to Irons's Compass Bank Account.

h. On or about September 12, 2007, Irons purchased a cashier's check for $10,000.00 and submitted it to **Pitts** and **Gipson** at Esquire Title, LLC, on behalf of AH for the purchase of the 11424 Gatesville Property.

i. On or about September 14, 2007, **Pitts**, **Gipson** and Irons caused a false gift letter to be submitted to Security National Mortgage; the letter stated that Irons was AH's brother, which **Pitts**, **Gipson**, and Irons knew to be false at the time, and had provided a gift to AH of $10,000.00 for AH's down payment for the purchase of the 11424 Gatesville Property.

j. On or about September 14, 2007, Santens transferred $1,854.36 by wire to Esquire Title, LLC, for AH's down payment for the purchase of the 11424 Gatesville Property.

k. On or about September 14, 2007, **Barnett**, **Pitts**, **Gipson**, Limbrick, Preston, Irons, Santens, HP, and others caused Security National Mortgage to fund the

mortgage loan to AH by transferring $411,043.48 by interstate wire to Esquire Title, LLC.

l. On or about September 17, 2007, **Pitts**, at Esquire Title, LLC, transferred $119,140.52 by wire as the seller's proceeds to Santens's NTDG account.

m. On or about September 17, 2007, Santens transferred $12,500.00 by wire from her NTDG account to Irons's Compass account as a kickback for identifying and facilitating the 11424 Gatesville Property transaction.

n. On or about September 17, 2007, Santens transferred $27,200.00 from Santens's NTDG account to Preston's WAMU account as a payment for recruiting AH to act as a buyer.

32. **13245 Box Elder Property**

a. On or about January 7, 2008, Irons and HP identified the 13245 Box Elder Property as a potential property for which they could obtain a fraudulently overstated appraisal, and shared this information with Santens.

b. On or about January 8, 2008, Santens, as a buyer, purchased the 13245 Box Elder Property through her company, LDS, from First Texas Homes, the seller, for the price of $295,000.00.

c. On or about January 10, 2008, Patterson and CH recruited SA to purchase the 13245 Box Elder Property from LDS for the purported price of $430,000.00.

d. On or about January 10, 2008, SA, as a buyer, and Santens, representing LDS as the seller, executed a sales contract for the 13245 Box Elder Property for the purported price of $430,000.00.

e. On or about January 30, 2008, **Scott** falsely appraised the 13245 Box Elder Property at $430,000.00; the appraisal was later submitted to AMCAP on behalf of SA.

f. On or about February 5, 2008, Allen, Patterson, and CH caused a fraudulent loan application that included false employment, income, occupancy, and asset information to be submitted to AMCAP, on behalf of SA, requesting loans totaling $408,500.00 to purchase the 13245 Box Elder Property.

g. On or about February 5, 2008, Santens purchased a $21,687.82 cashier's check at Bank of America in Plano, Texas, in the Eastern District of Texas. Santens then provided it to **Pitts** and **Gipson** at Esquire Title, LLC, for SA's down payment for the purchase of the 13245 Box Elder Property.

h. On or about February 5, 2008, **Gipson** and **Pitts** caused a HUD-1 to be submitted to AMCAP that included, among other false representations, that the buyer, SA, provided the $21,687.82 down payment.

i. On or about February 5, 2008, **Scott, Gipson**, **Pitts**, Allen, Patterson, Irons, Santens, CH, HP and others caused AMCAP to fund the mortgage loan to SA by transferring $410,752.57 by interstate wire to Esquire Title, LLC.

j. On or about February 6, 2008, **Gipson** and **Pitts** at Esquire Title, LLC, caused $96,907.35 to be transferred by wire as the seller's proceeds to Santens's BOA account.

k. On or about February 6, 2008, Santens transferred $6,500.00 by wire from Santens's BOA account to Irons's Compass account as a kickback for identifying and facilitating the 13245 Box Elder Property transaction.

l. On or about February 11, 2008, Santens transferred $32,000.00 by wire from Santens's BOA account to Patterson's GPM account as a payment for recruiting SA to act as a buyer.

m. On or about February 11, 2008, Patterson transferred $14,000.00 by wire from his GPM account to CH as a payment for assisting in recruiting SA.

n. On or about February 11, 2008, CH transferred $8,000.00 by wire to SA for acting as a buyer.

33. **13213 Box Elder Property**

a. On or about January 8, 2008, Irons and HP identified the 13213 Box Elder Property as a potential property for which they could obtain a fraudulently overstated appraisal, and shared this information with Santens.

b. On or about January 9, 2008, Preston recruited CB to purchase the 13213 Box Elder Property from LDS for the purported price of $417,000.00.

c. On or about January 25, 2008, CB, as a buyer, and Santens, representing LDS as the seller, executed a sales contract for the 13213 Box Elder Property for the purported price of $417,000.00.

d. On or about January 30, 2008, **Scott** falsely appraised the 13213 Box Elder Property at $433,000.00 and identified LDS as the public record owner, which appraisal was later submitted to AMCAP on behalf of CB.

e. On or about February 7, 2008, Santens, as a buyer, purchased the 13213 Box Elder Property through her company, LDS, from First Texas Homes, the seller, for the price of $295,000.00.

f. On or about February 15, 2008, Allen and Preston caused a fraudulent loan application that included false employment, income, occupancy, and asset information to be submitted to AMCAP, on behalf of CB, requesting loans totaling $396,150.00 to purchase the 13213 Box Elder Property.

g. On or about February 15, 2008, **Scott**, **Hines**, Allen, Preston, Irons, Santens, HP and others caused AMCAP to fund the mortgage loan to CB by transferring $396,700.98 by interstate wire to Esquire Title, LLC.

h. On or about February 19, 2008, Santens purchased a $21,889.67 cashier's check at Bank of America in Plano, Texas, in the Eastern District of Texas. Santens then provided it to Esquire Title, LLC, and **Hines** for CB's down payment for the purchase of the 13213 Box Elder Property.

i. On or about February 21, 2008, **Hines** at Esquire Title, LLC, transferred $87,628.36 by wire as the seller's proceeds to Santens's BOA account.

j. On or about February 21, 2008, Santens transferred $15,000.00 by wire from Santens's BOA account to Irons's SB Holdings' account as a payment for identifying and facilitating the 13213 Box Elder Property transaction.

k. On or about February 22, 2008, Santens internally transferred $15,000.00 from Santens's BOA account to Preston's BOA account as a payment for recruiting CB to act as a buyer.

34. **13231 Scotch Pine Property**

a. On or about December 7, 2007, Irons and HP identified the 13231 Scotch Pine Property as a potential property for which they could obtain a fraudulently overstated appraisal, and shared this information with Santens.

b. On or about February 13, 2008, Patterson and CH recruited SA to purchase the 13231 Scotch Pine Property from LDS for the purported price of $417,000.00.

c. On or about February 13, 2008, SA, as a buyer, and Santens, representing LDS as the seller, executed a sales contract for the 13231 Scotch Pine Property for the purported price of $417,00.00.

d. On or about March 5, 2008, Santens, as a buyer, purchased the 13231 Scotch Pine Property through her company, LDS, from First Texas Homes, the seller, for the price of $270,000.00.

e. On or about March 12, 2008, Patterson and CH caused a fraudulent loan application that included false employment, income, occupancy and asset information to be submitted to HSBC Mortgage, on behalf of SA, requesting loans totaling $417,000.00 to purchase the 13231 Scotch Pine Property.

f. On or about March 12, 2008, Santens purchased a $1,874.80 cashier's check at Bank of America in Plano, Texas, in the Eastern District of Texas. Santens then provided it to Esquire Title, LLC, for SA's down payment for the purchase of the 13231 Scotch Pine Property.

g. On or about March 12, 2008, Santens, Patterson, Irons, HP, CH and others caused HSBC Mortgage to fund the mortgage loan to SA by transferring $422,228.19 by wire to Esquire Title, LLC.

h. On or about March 13, 2008, RD at Esquire Title, LLC, transferred $119,140.52 by wire as the seller's proceeds to Santens BOA account.

i. On or about March 13, 2008, Santens transferred $17,000.00 from her BOA account to HP for payment to HP and Irons for identifying the 13231 Scotch Pine Property.

j. On or about March 14, 2008, Santens transferred $10,000.00 from her BOA account to Irons's Compass account.

k. On or about March 14, 2008, Santens transferred $27,000.00 from her BOA account to Patterson's GPM account for recruiting SA to act as a buyer.

l. On or about March 17, 2008, Patterson transferred $10,000.00 from his GPM account to SA for acting as a buyer.

m. On or about March 19, 2008, Patterson transferred $6,800.00 from his GPM account to CH for assisting in recruiting SA.

In violation of 18 U.S.C. § 1956(h).

**NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE**
Pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461

As the result of committing one or more of the offenses alleged in this Indictment, the defendants shall forfeit to the United States:

1. any property constituting, or derived from, and proceeds the defendants obtained, directly or indirectly, as the result of such violation; and

2. any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, including but not limited to the following:

**Property Belonging to Djuana Pitts.**

Approximately $8,122.87 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate is property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offense alleged in this Indictment.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with a third person;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendant.

By virtue of the commission of the offenses alleged in this Indictment, any and all interest the defendants have in the above-described property is vested in and forfeited to the United States.

A TRUE BILL

BB

GRAND JURY FOREPERSON

JOHN M. BALES
UNITED STATES ATTORNEY

FOR

CHRISTOPHER A. EASON
Assistant United States Attorney

3-13-13

Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | NO. 4:13CR |
| | § | Judge |
| DJUANA PITTS (1) | § | |
| ELLIOTT SCOTT (2) | § | |
| JENNIFER GIPSON (3) | § | |
| ALLEN KENT BARNETT II (4) | § | |
| PATRICIA HINES (5) | § | |

**NOTICE OF PENALTY**

**Count One**

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1957)

Penalty: A fine of not more than $250,000 or twice the pecuniary loss to the victim, and/or imprisonment for not more than 10 years, and a term of supervised release for not more than 3 years.

Special Assessment: $100.00